2017 BNH 015
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                Bk. No. 16-11181-BAH
                                                                                                      Chapter 7
Patricia D. Lombard,
        Debtor

Robert Browne,
Aqua Gulf Transport, &
JRL Properties, Inc.,
        Plaintiffs

v.                                                                                                    Adv. No. 17-1005-BAH

Patricia D. Lombard,
        Defendant

*Marc W. McDonald, Esq.*                                          *Brad C. Davis, Esq.*
*Ford & McPartlin, P.A.*                                          *Davis/Hunt Law, PLLC*
*Portsmouth, New Hampshire*                                       *Franklin, New Hampshire*
*Attorney for the Plaintiffs*                                     *Attorney for the Defendant*

## AMENDED MEMORANDUM OPINION

**I.  INTRODUCTION**

Before the Court is Patricia Lombard's[1] Motion to Dismiss Count II of Amended Complaint[2] and the Motion to Amend Complaint[3] of Robert Browne, Aqua Gulf Transport, and JRL Properties, Inc.[4]  In the Motion to Dismiss, the Debtor argues that Count II of the Plaintiffs' complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because the Plaintiffs have failed to state with particularity what debt is nondischargeable pursuant to 11

---

[1] The "Debtor" or "Defendant."
[2] Doc. No. 27, the "Motion to Dismiss."
[3] Doc. No. 32, the "Motion to Amend."
[4] Together, the "Plaintiffs."

U.S.C. § 523(a)(2)(A).  The Plaintiffs propose to further amend the complaint to add additional factual allegations supporting Count II.  For the reasons set forth below, the Court finds that Count II fails to state a claim because the Plaintiffs ask the Court to determine the dischargeability of the amount of an allegedly fraudulent transfer without claiming any legal right to recover such a fraudulent transfer from the Debtor.  The Court will deny the Motion to Amend because the proposed amendments do not address these pleading deficiencies and dismiss Count II without further leave to amend, given the amount of time that has elapsed since this case was filed and the number of unsuccessful attempts the Plaintiffs have already made at amending Count II.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

The Court draws the following factual background from the amended complaint.[5]  The Court will first recount the general background of the dispute between the parties and then discuss the procedural history.  The latter is more important to understanding the pleading deficiency in this case, which is not a matter of the Plaintiffs failing to make detailed factual allegations, but rather a function of their failure to state a claim entitling them to a recovery based on those facts.  The dispute at hand involves an alleged, actually fraudulent transfer from the Debtor's husband, Peter Lombard,[6] to the Debtor.  Mr. Lombard was the sole owner of a business, Café Bella Sera, Inc. The Defendants claim they loaned $387,000 by "oral agreement" to the Debtor, Mr. Lombard, and Café Bella Sera.  Sometime after incurring this debt, Mr. Lombard directed a fictitious entity "Café Bella Sera, LLC" to take out a business loan from

---

[5] Doc. No. 22, the "Amended Complaint".
[6] "Mr. Lombard."

2

American Express Travel Related Services Company, Inc.[7]  Rather than use the Amex Loan proceeds in the operation of Café Bella Sera, Inc., Mr. Lombard transferred $55,000[8] of these loan proceeds to the Debtor for no consideration, which the Debtor accepted with fraudulent intent.  These transfers occurred between October of 2013 and May of 2014, at a time when Café Bella Sera, Inc. and Mr. Lombard were insolvent.  The alleged purpose of these transfers was so that the Debtor could fund her new business, Sub Crazy, Inc., a restaurant in Meredith, New Hampshire.

The Debtor filed this bankruptcy case on August 19, 2016.  The Plaintiffs then filed the two count complaint that commenced this adversary proceeding on January 20, 2017.[9]  The Defendant filed an answer on January 31, 2017[10] and then moved to dismiss both counts of the complaint on February 27, 2017.[11]  At the hearing on the first motion to dismiss,[12] the Court noted that the Plaintiffs had not stated any claim by which they could actually recover a fraudulent transfer from the Debtor, and the Plaintiffs explicitly agreed with this assessment.  The Court denied the first motion to dismiss, with leave for the Plaintiffs to amend the complaint accordingly.  The Plaintiffs then filed the Amended Complaint, which adds more factual detail about the alleged fraudulent transfer, but still did not include any legal basis to recover the transfer from the Debtor.

---

[7] The "Amex Loan."
[8] Hereinafter the "Transfer Amount."  The Amended Complaint also alleges that Mr. Lombard transferred "in excess of $90,000" to the Debtor but does not explain how this relates to the $55,000 transfer.  This detail is not relevant to the disposition of the motions before the Court.
[9] Count I of the complaint is a claim pursuant to 11 U.S.C. § 727(a)(4)(A) in which the Plaintiffs assert that the Defendant's discharge should be denied on account of false oaths she made in connection with this case.  The Defendant does not seek dismissal of Count I in the Motion to Dismiss, so the Court will not discuss the particulars of that Count in this opinion.
[10] Doc. No. 5.
[11] Doc. No. 9.
[12] The hearing occurred on April 26, 2017.

3

The Court held an initial pretrial conference on June 21, 2017.  At that time, the Debtor had not filed any timely responsive pleading to the Amended Complaint.  The Court permitted the Debtor additional time to file a responsive pleading, without objection from the Plaintiffs.  Again, the Court raised concerns about what debt the Plaintiffs alleged was nondischargeable under Count II and how the Plaintiffs proposed to recover that debt.  The Plaintiffs elected to respond to this concern, in writing, after the pretrial conference.  To this end, they filed a Notice in which they clarified that they were only claiming that the Transfer Amount was nondischargeable, not the $387,000 debt based on the oral loan agreement.[13]  The Notice still did not address the legal nature of the Plaintiffs' fraudulent transfer claim.  After the pretrial conference, the Debtor filed the Motion to Dismiss, principally arguing that the Plaintiffs had failed to allege the existence of a fraudulent transfer claim in sufficient detail for the Court to determine its dischargeability.  In an attempt to shore up the Amended Complaint, the Plaintiffs filed the Motion to Amend, adding additional factual detail about the mechanics of the transfers from Mr. Lombard to the Debtor and supplying an allegation that the debt the Plaintiffs seek to determine the dischargeability of arose on account of the fraudulent transfer the Debtor received from Mr. Lombard.  The proposed third amended complaint does not include any legal claim that would allow the Plaintiffs to recover the alleged fraudulent transfer debt from the Debtor.  After a hearing on the Motion to Dismiss and Motion to Amend, the Court took the matter under advisement.

## III.  DISCUSSION

This dispute presents a narrow legal issue for the Court's consideration, namely can the Court determine the dischargeability of a debt arising from an actually fraudulent transfer where a creditor has not asserted a claim upon which to recover such a debt from a debtor.  Here, the

---

[13] Doc. No. 28.

Plaintiffs have made specific factual allegations about the Debtor's conduct with regard to the transfers they allege are actually fraudulent, but they have not made any claim under state or federal law to be able to recover money or property from the Debtor on account of that conduct. Instead, the Plaintiffs rely entirely on § 523(a)(2)(A) and argue that the Supreme Court in Husky International Electronics, Inc. v. Ritz and the First Circuit in Sauer Inc. v. Lawson endorsed such an approach.[14]  See Husky Int'l Elec., Inc. v. Ritz, 136 S. Ct. 1581 (2016); Sauer Inc. v. Lawson (In re Lawson), 791 F.3d 214 (1st Cir. 2015).  The Debtor moves to dismiss this claim for failing to adequately plead the existence of the debt the Plaintiffs are seeking to have the Court except from discharge.

In assessing a motion to dismiss pursuant to Bankruptcy Rule 7012 and Fed. R. Civ. P. 12(b)(6), the Court accepts all plausible, non-conclusory factual allegations as true—drawing all reasonable inferences in favor of the claimant—and determines whether those factual allegations are sufficient to state a claim for relief.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The "plausibility inquiry is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Rodriguez-Reyes v. Molina Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) (quotations omitted).

The Plaintiffs seek to except the Transfer Amount from the discharge as actually fraudulent under § 523(a)(2)(A).  Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

---

[14] The Plaintiffs do not present a detailed argument under either of these cases, rather they simply conclude that such an approach is possible.  See Pl. Response to Motion to Dismiss ¶ 16, Doc. No. 31; Amended Complaint ¶ 49.

11 U.S.C. § 523(a)(2)(A).  The recent decisions of the Supreme Court in Husky and the First Circuit in In re Lawson clarified that a debtor need not have made a misrepresentation for conduct to come within the definition of "actual fraud" for § 523(a)(2)(A) purposes.  Husky, 136 S. Ct. 1581; Lawson, 791 F.3d at 219.

Neither Husky nor Lawson—either explicitly or by implication—turn § 523(a)(2)(A) into a cause of action by which a creditor may recover a fraudulent transfer from a debtor.  In Husky, an unsecured creditor of the debtor's corporation, Chrysalis Manufacturing, brought an action to recover sums that the debtor had caused Chrysalis to transfer to other corporate entities that he controlled.  The unsecured creditor made this claim under a Texas statute that allows for shareholder liability for "actual fraud" of the corporation in certain instances.[15]  The unsecured creditor also sought to hold the amounts of Chrysalis' transfers nondischargeable under § 523(a)(2)(A).  The Supreme Court held that such a scenario could potentially amount to actual fraud within the meaning of § 523(a)(2)(A).  Husky, 136 S. Ct. at 1586 ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.").  Lawson involved a situation where the creditor had obtained a judgment for the recovery of a fraudulent transfer prepetition, under a Rhode Island statute.[16]  There, the First Circuit held, like Husky, that "actual fraud" in a § 523(a)(2)(A) context encompassed such actually fraudulent transfer schemes.  Lawson, 791 F.3d at 216.  Accordingly, both Husky and Lawson are distinguishable from this case because in those cases

---

[15] The Texas statute provides, in pertinent part:
"Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."
Tex. Bus. Orgs. Code Ann. § 21.223(b) (West 2017).

[16] The Rhode Island Uniform Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-1 et seq.  See Lawson, 791 F.3d at 217.

the creditor seeking to except a debt from discharge was asserting a substantive legal claim under state law that would enable that creditor to recover the amounts of the fraudulent transfer in question.

Other bankruptcy courts have addressed similar claims based on Husky since the Supreme Court issued that decision. In Walter v. Vanwinkle, a creditor with a prepetition judgment for a breach of contract sued the debtor, claiming that the amount of the contract judgment should be deemed nondischargeable pursuant to § 523(a)(2)(A) and the Husky decision because the debtor had orchestrated a scheme to hamper it in collecting its judgment. Walker v. Vanwinkle (In re Vanwinkle), 562 B.R. 671, 674 (Bankr. E.D. Ky. 2016). The Vanwinkle court noted that the creditor's complaint was deficient because it "did not assert a claim for, or sufficiently describe, a cause of action for losses caused by the post-judgment fraudulent scheme." Id. at 677. It also pointed out that the "debts in Husky . . . existed solely because of [a] veil-piercing statute[] that provided for individual liability for certain corporate obligations." Id. The court concluded that "[r]ather than assert a specific claim for post-judgment damages, the [p]laintiffs rely on the non-dischargeability statute itself as the source of the debt. Section 523(a)(2)(A) does not provide a cause of action that simultaneously creates a debt and renders it non-dischargeable." Id. citing Zacharakis v. Melo (In re Melo), 558 B.R. 521, 561 (Bankr. D. Mass. 2016). In the Melo case that Vanwinkle cites, Judge Feeney held that a creditor could not seek to impose liability on a debtor using just § 523(a)(2)(A) and the Husky decision without actually making out an affirmative claim to recover that liability. Melo, 558 B.R. at 561 (the plaintiff "has asserted no grounds, other than § 523(a)(2)(A), to hold the Debtor personally liable for the Loans, unlike the case in Husky in which the plaintiff relied on a Texas statute which permits creditors to hold shareholders liable for corporate debt under certain circumstances."). The Court finds the decisions in Vanwinkle and Melo to be persuasive. The Supreme Court's

7

decision in Husky does not provide the means for a creditor to impose liability for a fraudulent transfer scheme on a debtor; what it does is allow a creditor with a claim for recovery of such a fraudulent transfer, under a specific state or federal law, to make out a case that the fraudulent transfer amounts to actual fraud within the meaning of § 523(a)(2)(A).

Here, the Plaintiffs make no attempt to ground their factual claims regarding the transfers Mr. Lombard made to the Debtor in any right to recover apart from § 523(a)(2)(A). Given this failure, the Plaintiffs have failed to state a claim under § 523(a)(2)(A), and the Court must dismiss Count II of the Amended Complaint. The Court dismisses the Amended Complaint rather than permitting further attempts at amendment for several reasons. First, the proposed third amended complaint, attached to the Motion to Amend, does nothing to address the issue discussed in this opinion, so granting that motion would accomplish nothing. Second, the Court has given the Plaintiffs several chances to amend the complaint to properly state a claim. The Court first raised these issues sua sponte at the hearing on the first motion to dismiss and then raised them again, at the initial pretrial conference, after the Plaintiffs filed the Amended Complaint. Eight months have elapsed since the Plaintiffs commenced this proceeding, and they have not been able to articulate a claim in Count II. The Plaintiffs have been afforded ample opportunity to properly state a claim. See Airborne Beepers & Video v. AT&T Mobility LLC, 499 F.3d 663, 666-67 (7th Cir. 2007) (repeated failures to cure pleading deficiencies after multiple amendments constitute grounds for refusing further leave to amend). The Court finds that it would be inappropriate to permit another round of amendments at this late juncture.

## IV.  CONCLUSION

For the reasons set forth above, the Court will grant the Motion to Dismiss and deny the Motion to Amend.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   October 25, 2017              /s/ Bruce A. Harwood
                                      Bruce A. Harwood
                                      Chief Bankruptcy Judge